IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED by ___ D.C.
DEC 14 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

| | |
|---|---|
| UNITED STATES ex rel. "JOHN DOE", | Civil Action No. 09-23705 |
| STATE OF FLORIDA ex rel. "JOHN DOE", | FILED IN CAMERA AND UNDER SEAL |
| Plaintiff-Relator, v. | |
| UNDER SEAL | Jury Trial Requested |
| Defendants. | |

CIV - LENARD

MAGISTRATE JUDGE
TURNOFF

# Sealed Complaint



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES ex rel.
"JOHN DOE",

STATE OF FLORIDA ex rel.
"JOHN DOE",

    Plaintiff-Relator,

v.

MARTHA C. OROZCO; RAUL MORAL; CM LAB, INC.; MORAL MARKETING SERVICES, INC.; FINLAY CLINICAL LABORATORY, INC.; LUIS LEMES; MARTA LEMES; PHYSICIAN'S LABORATORY SERVICES, INC.; RAFAEL BENITEZ, SR.; MERIDIAN CLINICAL LABORATORY CORP.; MARIA ACOSTA; GENESIS MEDICAL LABORATORY CORP.; EDITA CARDO; UNITED LABORATORY SERVICE CORP.; IDALMA HAIDAR; NATIONAL MEDICAL LABORATORY, INC.; JUAN B. GONZALEZ; FLORIDA FAMILY LABORATORY, INC.; JOSE R. VILLACIS; COMPLETE BIO SOLUTIONS, INC.; HERIBERTO MARTINEZ; ALEXANDER MORALES; ALBA MEDICAL CENTER, INC.; DORA HERNANDEZ; COMFORT HEALTH MANAGEMENT, LLC; VANESSA M. SECRETA PORTILLA; GERARDO PRESIDE PORTILLA; DOCTOR'S MEDICAL CENTER, INC.; VENTURA DE PAZ; INTEGRATE MEDICAL INSTITUTE OF MIAMI, INC.; PRIVATE MEDICAL CENTER, INC.; HECTOR M PENA; QUICK MEDICAL SERVICE, INC.; IVONNE BONET; DISCOVERY THERAPY INC.;

Civil Action No. _____

**FILED IN CAMERA AND UNDER SEAL**

**COMPLAINT: VIOLATIONS OF FALSE CLAIMS ACT 31 U.S.C. § 3729,** *et seq.*

1

ARSENIO LEON; "DOE, M.D., JANE" )
ALEN, M.D., ZOILA M.; BOSCH, M.D., )
PEDRO P.; CAMARA, M.D., EFRAIN; CARO, )
M.D., PEDRO R.; CARVAJAL, M.D., )
REINALDO; CHAMAH, M.D., MIGUEL A.; )
CHIONG, M.D., RAFAEL; CHOY, M.D., )
PETER V.; CORDOVES, M.D., LOURDES A.; )
CORO, M.D., RAMIRO; DE LA CRUZ M.D., )
FERNANDO V.; DEL POZO-SAAVEDRA, )
M.D., ONELIA; DEPENA, M.D, )
FLORENCIO; DIAZ, PEDRO O., M.D.; )
DIEPPA, M.D., JORGE; DUMENIGO, M.D., )
FEDERICO; DUMENIGO, M.D., RODOLFO; )
FERNANDEZ, M.D., BENIDECTO; FERRAN, )
M.D., DELSA E.; FERRAN, M.D., VICTOR A.; )
FONDEVILA M.D., MARIANO M.; )
FONSECA, M.D., DENIO O.; GOMEZ, M.D., )
RENÉ J.; IGLESIAS, M.D., CARLOS; LARA, )
M.D., MIRIAM M.; MARQUEZ-MEDINA, )
M.D, JULIAN; MENENDEZ, M.D., JESUS B.; )
MUÑOZ DIAZ, M.D., JULIAN C.; ORTIZ, )
M.D., DEMETRIO; ORTIZ, M.D., NANCY; )
PIMENTEL, M.D. FRANKLIN; PIMENTEL, )
M.D., ELEONOR; PITA, M.D., FRANCISCO )
E.; ROSELL M.D., JOSE A.; RUIZ M.D., )
JOSE LUIS; SANCHEZ, M.D., JOSE U.; )
SANTANDER, M.D., JORGE L.; SARFATI, )
M.D., SAMUEL; SPIL, M.D., SAMUEL; )
VILLOCH M.D., CHARLES; VILLOCH M.D., )
MARIO; )
)
Defendants. )

## COMPLAINT

1. This is a qui tam action by Plaintiff-Relator "John Doe" ("Relator"), for himself and on behalf of the United States and the State of Florida, to recover damages and civil penalties arising from Defendants' actions in violating the Federal and Florida False Claims Acts.

2. As set forth below, Defendants (a group consisting of clinical laboratories, clinics and physicians) provided or accepted remuneration for patient referrals to said laboratories. Such

2

remuneration violates the Stark Law, in that it creates a prohibited "financial relationship" between the laboratories and the referring physicians, as defined by the Stark Law. Under the Stark Law, laboratories are prohibited from submitting claims for payment to Medicare and Medicaid based on referrals from physicians who have a financial relationship with the laboratory. Such remuneration in exchange for referrals by physicians is also a violation of the federal Anti-Kickback Statute, which prohibits the acceptance of an inducement or reward for patient referrals. As a result of these prohibited referral activities, , Defendants submitted numerous false or fraudulent claims for payment to Federal and State healthcare programs.

### Jurisdiction and Venue

3. This action arises under the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Florida False Claims Act F.S.A. § 68.081 *et seq.*

4. Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732(a), 31 U.S.C. § 3730(h), and 28 U.S.C. § 1331, in that Count I of this action arises under the laws of the United States.

5. Supplemental jurisdiction over Count II arises under 28 U.S.C. § 1367, since that count forms part of the same case or controversy.

6. Venue is proper in this district under 31 U.S.C. § 3732(a). At least one of the Defendants can be found, resides, or transacts business within the district, and many of the acts forming the basis of this action occurred within the district.

7. Relator alleges that he directly, independently, and personally has observed and gained knowledge of activities described herein and undertaken by various Defendants and their agents, and that this Complaint and the other information that he has provided is based upon such knowledge and observations.

8. None of the allegations set forth in this Complaint are based on a "public disclosure" of allegations or transactions in a criminal, civil, or administrative hearing pursuant to 31 U.S.C. § 3730(3)(4)(A), in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or from the news media.

9. In the event that it were ever found that there has been a "public disclosure" of these allegations under 31 U.S.C. § 3730(3)(4)(A), Relator nonetheless would be an "original source" pursuant to 31 U.S.C. § 3730(3)(4)(A) because, pursuant to 31 U.S.C. § 3730(3)(4)(B), he "has

direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."

### The Parties: Relator, Laboratory Defendants and Physician Defendants

10. Plaintiff-Relator "**John Doe**" ("Relator") is a resident of Miami-Dade County, Florida.

11. Plaintiff **the United States of America** funds the provision of medical care, including medical services for eligible citizens through the Medicare and Medicaid Programs, and other programs.

12. Plaintiff **the State of Florida** funds the provision of medical care, including medical services for eligible citizens through the Medicaid Program.

13. The **United States of America** and the **State of Florida** are hereinafter collectively referred to as "**the Government**."

### Laboratory Defendants

14. The defendant laboratories and their officers listed below are hereinafter collectively referred to as "**Laboratory Defendants**" or the "**Laboratories**."

15. Defendant **CM Lab, Inc.**[1] (hereinafter "CM Lab") is a Florida corporation and conducts its operations in Miami-Dade and Broward Counties, Florida.

16. Defendant **Martha C. Orozco** is the President of Defendant **CM Lab, Inc.**

17. On information and belief, at all times Defendant **Martha C. Orozco** signed or supervised the signing of official forms on behalf of her laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

18. **Moral Marketing Services, Inc.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

19. Defendant **Raul Moral** works as a salesman for Defendant **CM Lab, Inc.** and is president of Defendant **Moral Marketing Services, Inc.**

---

[1] Defendant *CM Lab, Inc.* should not be confused with the similarly named "*C.M. Laboratory Inc.*" also located in Miami, president, secretary, treasurer Miniea, Catalina; vice president Schwarzweald, Gaston.

4

20. Defendant **Finlay Clinical Laboratory, Inc.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

21. **Luis Lemes** is a President and a Director of Defendant **Finlay Clinical Laboratory, Inc.**

22. **Marta Lemes** is a President and a Director of Defendant **Finlay Clinical Laboratory, Inc.**

23. On information and belief, at all times Defendants **Luis Lemes** and/or **Marta Lemes** signed or supervised the signing of official forms on behalf of their laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

24. Defendant **Physician's Laboratory Services, Inc.** (hereinafter "**Physician's Laboratory**") is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

25. **Rafael Benitez, Sr.** is the President, Vice President, Treasurer, Secretary and sole Director of Defendant **Physician's Laboratory Services, Inc.**

26. On information and belief, at all times Defendant **Rafael Benitez, Sr.** signed or supervised the signing of official forms on behalf of his laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

27. Defendant **Meridian Clinical Laboratory Corp.** (hereinafter "**Meridian Laboratory**") is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

28. **Maria Acosta** is the sole officer (Secretary) and sole director of Defendant **Meridian Clinical Laboratory, Corp.**

29. On information and belief, at all times Defendant **Maria Acosta** signed or supervised the signing of official forms on behalf of her laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

30. Defendant **Genesis Medical Laboratory Corp.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

31. Defendant **Edita Cardo** is the president of Defendant **Genesis Medical Laboratory Corp.**

32. On information and belief, at all times Defendant **Edita Cardo** signed or supervised the signing of official forms on behalf of her laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

33. Defendant **United Laboratory Service Corp** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

34. Defendant **Idalma Haidar** is the president of Defendant **United Laboratory Service Corp**

35. On information and belief, at all times Defendant **Idalma Haidar** signed or supervised the signing of official forms on behalf of her laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

36. Defendant **National Medical Laboratory, Inc.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

37. **Juan B. Gonzalez** is a President, Vice President, Treasurer and Secretary of Defendant **National Medical Laboratory, Inc.**

38. On information and belief, at all times Defendant **Juan B. Gonzalez** signed or supervised the signing of official forms on behalf of his laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

39. Defendant **Florida Family Laboratory, Inc.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

40. Defendant **Jose R. Villacis** is the President, Vice President, Treasurer, Secretary and sole Director of Defendant **Florida Family Laboratory, Inc.**

41. On information and belief, at all times Defendant **Jose R. Villacis** signed or supervised the signing of official forms on behalf of his laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

42. Defendant **Complete Bio Solutions, Inc.** is a Florida corporation and conducts its operations in Miami-Dade County, Florida.

43. Defendant **Heriberto Martinez** is the President, Treasurer and sole Director of Defendant **Complete Bio Solutions, Inc.**

44. Defendant **Alexander Morales** is the Secretary of Defendant **Complete Bio Solutions, Inc.**

45. On information and belief, at all times Defendants **Heriberto Martinez and/or Alexander Morales** signed or supervised the signing of official forms on behalf of their laboratory for submission for payment to the Government, and presented or caused to be presented to the Government one or more claims arising from prohibited referrals.

46. Each of the **Defendant Laboratories** derives substantial revenue from Medicare, Medicaid, and other federal or state healthcare programs, as a result of referrals from one or more of the Physician Defendants.

## Physician and Clinic Defendants

47. The individual and corporate defendants are hereinafter collectively referred to as "**Physician Defendants**" or the "**Physicians.**"

48. Defendant **Alba Medical Center, Inc.** is a Florida corporation, conducts its operations in Miami-Dade County, Florida.

49. Defendant **Alba Medical Center, Inc.**'s president, **Dora Hernandez** is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

50. Defendant **Comfort Health Management, LLC** is a Florida corporation and conducts its activities in Miami-Dade County, Florida and refers laboratory tests to one or more of the Laboratory Defendants.

51. Defendant **Comfort Health Management, LLC's** Manager, **Vanessa M. Secreta Portilla** is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

52. Defendant **Comfort Health Management, LLC's** Manager, **Gerardo Preside Portilla** is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

53. Defendant **Doctor's Medical Center, Inc.** is a Florida corporation, conducts its activities in Miami-Dade County, Florida. and refers laboratory tests to one or more of the Laboratory Defendants.

54. Defendant **Doctor's Medical Center, Inc.** and refers laboratory tests to one or more of the Laboratory Defendants.

55. Defendant **Doctor's Medical Center, Inc.'s** President and Director, **Ventura De Paz**, is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

56. Defendant **Integrate Medical Institute of Miami, Inc,** is a Florida corporation. conducts its activities in Miami-Dade County, Florida and refers laboratory tests to one or more of the Laboratory Defendants.

57. Defendant **Private Medical Center, Inc.** is a Florida corporation, conducts its activities in Miami-Dade County, Florida and refers laboratory tests to one or more of the Laboratory Defendants.

58. Defendant **Private Medical Center, Inc.** president, **Hector M Pena**, is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

59. Defendant **Quick Medical Service, Inc.** is a Florida corporation, conducts its activities in Miami-Dade County, Florida and refers laboratory tests to one or more of the Laboratory Defendants.

60. Defendant **Quick Medical Service, Inc.'s** president **Ivonne Bonet** is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

61. Defendant **Discovery Therapy Inc.** is a Florida corporation, conducts its activities in Miami-Dade County, Florida and refers laboratory tests to one or more of the Laboratory Defendants.

62. Defendant **Discovery Therapy Inc.'s** president, **Arsenio Leon**, is engaged in the referral of laboratory tests to one or more of the Laboratory Defendants.

63. Defendant "**Doe, M.D., Jane**" practices medicine in Miami-Dade County Florida.

64. Defendant **Alen, M.D., Zoila M.** practices medicine in Miami-Dade County Florida.

65. Defendant **Bosch, M.D., Pedro P.** practices medicine in Miami-Dade County Florida.

66. Defendant **Camara, M.D., Efrain** practices medicine in Miami-Dade County Florida.

67. Defendant **Caro, M.D., Pedro R.** practices medicine in Miami-Dade County Florida.

68. Defendant **Carvajal, M.D., Reinaldo,** practices medicine in Miami-Dade County Florida.

69. Defendant **Chamah, M.D., Miguel A.,** practices medicine in Miami-Dade County Florida.

70. Defendant **Chiong, M.D., Rafael,** practices medicine in Miami-Dade County Florida.

71. Defendant **Choy, M.D., Peter V.** practices medicine in Miami-Dade County Florida.
72. Defendant **Cordoves, M.D., Lourdes A.** practices medicine in Miami-Dade County Florida.
73. Defendant **Coro, M.D., Ramiro** practices medicine in Miami-Dade County Florida.
74. Defendant **de la Cruz M.D., Fernando V.**, practices medicine in Miami-Dade County Florida.
75. Defendant **Del Pozo-Saavedra, M.D., Onelia**, practices medicine in Miami-Dade County Florida.
76. Defendant **Depena, M.D, Florencio**, practices medicine in Miami-Dade County Florida.
77. Defendant **Diaz, Pedro O., M.D.**, practices medicine in Miami-Dade County Florida.
78. Defendant **Dieppa, M.D., Jorge**, practices medicine in Miami-Dade County Florida.
79. Defendant **Dumenigo, M.D., Federico**, practices medicine in Miami-Dade County Florida.
80. Defendant **Dumenigo, M.D., Rodolfo**, practices medicine in Miami-Dade County Florida.
81. Defendant **Fernandez, M.D., Benidecto**, practices medicine in Miami-Dade County Florida.
82. Defendant **Ferran, M.D., Delsa E.**, practices medicine in Miami-Dade County Florida.
83. Defendant **Ferran, M.D., Victor A.**, practices medicine in Miami-Dade County Florida.
84. Defendant **Fondevila M.D., Mariano M.**, practices medicine in Miami-Dade County Florida.
85. Defendant **Fonseca, M.D., Denio O.**, practices medicine in Miami-Dade County Florida.
86. Defendant **Gomez, M.D., René J.**, practices medicine in Miami-Dade County Florida.
87. Defendant **Iglesias, M.D., Carlos**, practices medicine in Miami-Dade County Florida.
88. Defendant **Lara, M.D., Miriam M.**, practices medicine in Miami-Dade County Florida.
89. Defendant **Marquez-Medina, M.D, Julian**, practices medicine in Miami-Dade County Florida.
90. Defendant **Menendez, M.D., Jesus B.**, practices medicine in Miami-Dade County Florida.
91. Defendant **Muñoz Diaz, M.D., Julian C.**, practices medicine in Miami-Dade County Florida.
92. Defendant **Ortiz, M.D., Demetrio**, practices medicine in Miami-Dade County Florida.

93. Defendant **Ortiz, M.D., Nancy,** practices medicine in Miami-Dade County Florida.
94. Defendant **Pimentel, M.D. Franklin,** practices medicine in Miami-Dade County Florida.
95. Defendant **Pimentel, M.D., Eleonor,** practices medicine in Miami-Dade County Florida.
96. Defendant **Pita, M.D., Francisco E.,** practices medicine in Miami-Dade County Florida.
97. Defendant **Rosell M.D., Jose A.,** practices medicine in Miami-Dade County Florida.
98. Defendant **Ruiz M.D., Jose Luis,** practices medicine in Miami-Dade County Florida.
99. Defendant **Sanchez, M.D., Jose U.,** practices medicine in Miami-Dade County Florida.
100. Defendant **Santander, M.D., Jorge L.,** practices medicine in Miami-Dade County Florida.
101. Defendant **Sarfati, M.D., Samuel,** practices medicine in Miami-Dade County Florida.
102. Defendant **Spil, M.D., Samuel,** practices medicine in Miami-Dade County Florida.
103. Defendant **Villoch M.D., Charles,** practices medicine in Miami-Dade County Florida.
104. Defendant **Villoch M.D., Mario,** practices medicine in Miami-Dade County Florida.

105. Each of the above named individual and corporate **Physician Defendants** refers laboratory tests to one or more of the Laboratory Defendants.
106. Each of the above named individual and corporate **Physician Defendants** have referred one or more Medicare or Medicaid patients to one or more Laboratory Defendants.
107. Laboratory Defendants have submitted, and continue to submit, numerous claims for payment to Medicare, Medicaid, and other federal healthcare programs arising out of referrals from such physicians.

**The Stark Law**

108. 42 U.S.C. §1395nn, commonly referred to as the "Stark II" statute, and its associated regulations, 42 C.F.R. § 350 *et seq.* (collectively, the "Stark Law"), provide that, if a physician has a "financial relationship" with an entity, the physician may not make a referral to the entity for the provision of "designated health services," unless the relationship satisfies the requirements of an exception set forth in the Stark Law.
109. The Stark Law further provides that an entity may not present or cause to be presented to Medicare a claim for designated health services furnished pursuant to a prohibited referral. In addition, Medicare is prohibited from making payment on any such claim.

10

110. The provisions of the Stark Law have been extended to Medicaid pursuant to 42 U.S.C. § 1396b(s).

111. Under the Stark Law, a "financial relationship" consists of either an "ownership or investment interest" or a "compensation arrangement." 42 U.S.C. § 1395nn(a)(2).

112. The term "compensation arrangement" means any arrangement involving any remuneration between a physician (or an immediate family member of such physician) and an entity, subject to certain exclusions. 42 U.S.C. § 1395nn(h)(1)(A).

113. The term "remuneration" includes any payment or other benefit made directly or indirectly, overtly or covertly, in cash or in kind, subject to certain exclusions. 42 U.S.C. § 1395nn(h)(1)(B); 42 C.F.R. § 411.351.

114. The remuneration paid by Laboratory Defendants to Physician Defendants creates "financial relationships" between Laboratory Defendants and their respective referring Physician Defendants under the Stark Law, and no such relationship meets the requirements of any exception under the Stark Law. Therefore, Laboratory Defendants are prohibited from submitting claims to Medicare and Medicaid for designated health services furnished pursuant to referrals from such Physician Defendants.

115. The Stark Law contains a number of exceptions, and if an arrangement strictly complies with the requirements of an exception, it will be deemed not to constitute a prohibited financial relationship. Although each exception has its own specific requirements, most of the exceptions require that the arrangement between the parties be set forth in a written agreement signed by the parties, and that the compensation reflect fair market value for the services provided by the physician.

116. The payments described below violate the Stark Law, in that they are improper remuneration for which no exception applies.

117. Claims violating the Stark law constitute false claims under the False Claims Act ("FCA"), at 31 U.S.C. § 3729 *et seq.*

### The Anti-Kickback Statute

118. The Anti-Kickback Statute makes it illegal to knowingly and willfully offer or pay any remuneration directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person (i) to refer an individual to a person for the furnishing or arranging for the

11

furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (ii) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. 42 U.S.C. §§ 1320a-7b(b)(2).

119. The regulations issued pursuant to the Anti-Kickback Statute set forth a number of "safe harbors," compliance with which will protect a person from application of the statute. Although each safe harbor has its own specific requirements, most of the safe harbors require that the arrangement between the parties be set forth in a written agreement signed by the parties, and that the compensation reflect fair market value for the services provided.

120. Physicians are the primary referral source for laboratories, and thus have the ability to direct substantial business to laboratories. Laboratories therefore have an incentive to provide remuneration to physicians in order to induce them to refer business to the laboratory, or to reward them for past referrals.

121. The payments described below violate the Anti-Kickback Statute, in that they are made for the purpose of inducing or rewarding referrals of items and services to be paid for by federal and state healthcare programs.

122. Claims violating the Anti-Kickback Statute constitute false claims under the False Claims Act ("FCA"), at 31 U.S.C. § 3729 *et seq*.

### The Schemes

123. Laboratory Defendants and Physician Defendants have engaged in a pattern of providing or requesting inducements or rewards to physicians for referring business, in violation of the Stark and Anti-Kickback Statutes. The inducement or reward takes various forms:

  i. Laboratory bills the Physician Defendant, but does not seek to collect with respect to private (non-Medicare/Medicaid) patients and eventually writes off the amounts due from the Physician Defendants with respect to the private patients as uncollectable, resulting in the referring physician retaining all payments received from the patient for laboratory work performed.

  ii. Laboratory does not bill the Physician Defendant for "private" (non-Medicare/Medicaid) patients, resulting in the referring physician retaining all payments received from the patient for laboratory work performed.

12

    iii. Laboratory charges the referring Physician Defendants lower rates for private patients, allowing referring physicians to retain a greater percentage of the lab fees they charge the patient

    iv. Laboratory kicks back cash or other benefit to the physician for Medicare and Medicaid referrals either directly or through commissioned sales staff.

    v. Laboratory pays above market rate for space in referring physician's office.

124. During the period from 2008 through 2009, each of the Laboratory Defendants engaged in one or more of the above described schemes with one or more Physician Defendants which resulted in one or more referrals which resulted in false claims.

125. During the period from 2008 through 2009, each of the Physician Defendants has received improper remuneration from one or more of the Laboratory Defendants which resulted in improper referrals.

126. With respect to item (iv) above, on information and belief, Defendant **Raul Moral**, salesman for Defendant **CM Laboratory**, and his company defendant **Moral Marketing Services, Inc.**, kicks back cash to Defendant Dr. **Jesus Menendez.**

127. With respect to item (v) above, on information and belief, Defendant **Benidecto Fernandez, M.D.**, is receiving above market rates for office space from Defendant **CM Lab, Inc.**

128. In addition to the referrals to Laboratory Defendants, some physicians:

    i. Refer Medicare and Medicaid to Laboratory Defendants while referring lower paying HMO and private insurance patients to laboratories that do not participate in illegal kickbacks such as Quest or LabCorp.

    ii. Diagnose Medicare or Medicaid patients in a manner that results in a higher laboratory revenue for those patients than for similar non-Medicare/Medicaid patients.

129. Relator learned of the various schemes by Defendants while working as an employee for various laboratories.

130. Through his employment, Relator learned which doctors participated in and/or required improper inducements for Medicare and Medicaid referrals.

131. Through his employment, Relator learned which laboratories offered improper inducements for Medicare and Medicaid referrals.

132. Outside of his employment, Relator has additional knowledge of various laboratories' and physicians' improper financial relationships and improper remuneration for referrals.

133. Relator has had personal conversations with representatives of physician's offices and laboratories detailing and confirming the various schemes. These conversations included:

  i. Staff at **Ramiro Coro, M.D.'s** office, staff at **Mariano Fondevila, M.D**'s and staff at **Finlay Laboratory** confirming their own and **Finlay Laboratory**'s participation in an improper financial relationships and referrals.

  ii. Staff at **Pedro Caro, M.D.'s** Varadero Medical Center confirming their own and **Finlay Laboratory**'s participation in an improper financial relationships and referrals.

  iii. Staff at **Efraim Camara, M.D., Jorge Santander, M.D.** and at **Comfort Health Management, LLC** offices confirming their own and **Physician's Laboratory**'s participation in an improper financial relationships and referrals.

  iv. Staff at **Comfort Health Management**, LLC confirming their own and **Complete Bio Solutions's** and **Physician's Laboratory's** participation in an improper financial relationships and referrals.

  v. Staff at **Rafael Chiong, M.D.** and **Florencio Depena M.D.** confirming their own and **Meridian Clinical Laboratory Corp.'s** participation in an improper financial relationships and referrals.

  vi. Staff at **Quick Medical Service Inc.** and **Genesis Medical Laboratory** confirming both of those entities' participation in improper financial relationships and referrals.

  vii. Staff at **Discovery Therapy** confirming its and **United Laboratory**'s participation in the scheme.

  viii. Staff at **Comfort Clinic** confirming its, **CBS Laboratory**, and **United Laboratory**'s participation in the scheme.

  ix. Staff at non-defendant laboratories confirming loss of referring physician clients to all Laboratory Defendants (except Complete Bio Solutions) as a result of improper remuneration.

  x. Staff at non-defendant laboratories confirming all Physician Defendants seeking improper remuneration for referrals.

14

134. As a result, Laboratory Defendants have submitted numerous false claims for payment to Medicare, Medicaid, and other federal healthcare programs.

135. The referring Physician Defendants, through their Stark and Anti-Kickback Statute violations have also violated the state and federal False Claims Acts and other federal healthcare programs.

### COUNT I: FEDERAL FALSE CLAIMS ACT

The allegations in the preceding paragraphs are incorporated by reference.

136. The knowing submission of claims based on prohibited referrals by the Stark statute violates the False Claims Act, 31 U.S.C. § 3729 *et seq*.

137. The knowing submission of claims based on referrals precluded by the Anti-Kickback Statute constitutes a violation of the False Claims Act.

138. Defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq*., in that they:

   i. knowingly presented or caused to be presented numerous false claims for payment or approval;

   ii. knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, or to get false or fraudulent claims paid or approved; and

   iii. conspired to commit the above acts and to defraud the Government by getting false or fraudulent claims allowed or paid.

As a result of Defendants' violations of 31 U.S.C. § 3729, the United States has suffered damages in an amount to be determined at trial, plus civil penalties.

### COUNT II: FLORIDA FALSE CLAIMS ACT

The allegations in the preceding paragraphs are incorporated by reference.

139. Defendants violated the Florida False Claims Act, F.S.A. § 68.081 *et seq*., in that they:

   i. knowingly presented or caused to be presented numerous false claims for payment or approval to an agency in violation of F.S.A. § 68.082(2)(a);

   ii. knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by an agency in violation of F.S.A. § 68.082(2)(b); and

iii. conspired to submit false or fraudulent claims to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid, in violation of F.S.A. § 68.082(2)(c).

140. As a result of Defendants' violations of the Florida False Claims Act, the State of Florida has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Relator, on behalf of himself, the United States, and the State of Florida, prays:

i. That the Court enter judgment against each Defendant in an amount equal to three times the amount of damages the United States and/or the State of Florida have sustained because of such Defendant's actions, plus a civil penalty as required or allowed by law for each violation of the Federal and Florida False Claims Acts;

ii. That Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim if the United States and/or the State of Florida intervene, and not less than 25 percent nor more than 30 percent of the proceeds of the action or settlement of the claim if the United States and/or the State of Florida do not intervene;

iii. That Relator be awarded all costs and expenses incurred, including reasonable attorneys' fees; and

iv. That the Court order such other relief as is appropriate.

Trial by jury is hereby requested.

Respectfully submitted,

_____

Jonathan Kroner
Florida Bar No. 328677
420 Lincoln Rd., Suite 446
Miami Beach, FL 33139
(305) 310-6046
JK@FloridaFalseClaim.com
Attorney for Plaintiff-Relator "John Doe"